**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SIGNODE INDUSTRIAL GROUP LLC,<br><br>Plaintiff,<br><br>v.<br><br>HANGZHOU YOUNGSUN INTELLIGENT EQUIPMENT CO., LTD. d/b/a YOUNGSUN PACK,<br><br>Defendant. | C.A. No. 2:25-cv-00633<br><br>**Jury Trial Demanded** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Signode Industrial Group LLC ("Signode") files this Complaint for patent infringement against Defendant Hangzhou Youngsun Intelligent Equipment Co., Ltd. d/b/a Youngsun Pack ("Youngsun Pack") and in support alleges as follows:

**INTRODUCTION**

1.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271, based on Youngsun Pack's infringement of U.S. Patent Nos. 12,221,238 (the "'238 Patent"); 11,731,794 (the "'794 Patent"); 10,518,914 (the "'914 Patent"); D864,688 (the "D'688 Patent"); D874,897 (the "D'897 Patent"); and D889,229 (the "D'229 Patent") (collectively, the "Asserted Patents").

**THE PARTIES**

2.      Signode is a Delaware limited liability company with its principal place of business at Hidden River Corporate Center Two, 14025 Riveredge Drive, Suite 500, Tampa, Florida, 33637.

3.      On information and belief, Youngsun Pack is a Chinese corporation with its principal place of business at No. 2, Xiyuan 7 RD West Lake Science & Technology Development Area Hangzhou, China, 310030.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the United States patent laws, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

5.      Personal jurisdiction by this Court over Youngsun Pack is appropriate at least under a specific jurisdiction and/or stream of commerce theory. This Court has personal jurisdiction over Youngsun Pack in this action because Youngsun Pack has committed acts of infringement within the State of Texas and within this District through, for example, the sale and offer for sale of infringing strapping tools to various third-party retailers, and delivery of those tools with the expectation that they will be purchased by customers in Texas.

6.      On information and belief, Youngsun Pack regularly transacts business in the State of Texas and within this District. Youngsun Pack engages in other persistent courses of conduct and derives substantial revenue from products provided in this District and in Texas, and has purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District. Given these contacts, the Court's exercise of jurisdiction over Youngsun Pack will not offend traditional notions of fair play and substantial justice.

7.      For example, on information and belief, Youngsun Pack manufactures strapping tools for and sells them to various retailers within the State of Texas. One of those retailers is Benchmark Industrial. As shown below, Benchmark Industrial has a distribution facility in Texas.

2

The below map identifying this facility is available at https://www.benchmarkinc.com/national-coverage-zones.



8.     Another one of those retailers is Rocket Industrial. As shown below, Rocket Industrial has a distribution facility in Hoston, Texas. The below map identifying this facility is available at https://www.rocketindustrial.com/contact-us.html.



9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). Under 28 U.S.C. § 1391(c), "a defendant not resident in the United States may be sued in any

judicial district." As a foreign entity, Youngsun Pack is subject to § 1391(c). *See, e.g.*, *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) (holding that a foreign corporation is subject to suit in any judicial district under 28 U.S.C. § 1391(c)) (citing *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 706 (1972)).

## THE ASSERTED PATENTS

10.     The United States Patent and Trademark Office issued the '238 Patent, titled "Strapping Device," on February 11, 2025.

11.     Signode lawfully owns the '238 Patent, and a true and correct copy of the '238 Patent is attached as Exhibit A.

12.     The United States Patent and Trademark Office issued the '794 Patent, titled "Strapping Device," on August 22, 2023.

13.     Signode lawfully owns the '794 Patent, and a true and correct copy of the '794 Patent is attached as Exhibit B.

14.     The United States Patent and Trademark Office issued the '914 Patent, titled "Strapping Device," on December 31, 2019.

15.     Signode lawfully owns the '914 Patent, and a true and correct copy of the '914 Patent is attached as Exhibit C.

16.     The United States Patent and Trademark Office issued the D'688 Patent, titled "Strapping Device," on October 29, 2019.

17.     Signode lawfully owns the D'688 Patent, and a true and correct copy of the D'688 Patent is attached as Exhibit D.

18.     The United States Patent and Trademark Office issued the D'897 Patent, titled "Strapping Device," on February 11, 2020.

19.    Signode lawfully owns the D'897 Patent, and a true and correct copy of the D'897 Patent is attached as Exhibit E.

20.    The United States Patent and Trademark Office issued the D'229 Patent, titled "Strapping Device," on July 7, 2020.

21.    Signode lawfully owns the D'229 Patent, and a true and correct copy of the D'229 Patent is attached as Exhibit F.

22.    The D'688, D'897, and D'229 Patents may collectively be referred to as the "BXT3 Design Patents."

## SIGNODE'S BUSINESS

23.    Signode and its global affiliates make and sell hundreds of products that protect their customers' goods during warehousing and transit. Those products include consumables—such as plastic strap, steel strap, and plastic stretch film—and tools and equipment that apply the consumables to goods to pack, bundle, unitize, protect, and secure them.

24.    The high-end market for industrial-packaging tools and equipment in which Signode participates is highly competitive, which incentivizes innovation.

25.    Signode has grown its global patent portfolio to over 400 United States issued patents or pending patent applications and over 1,050 issued patents or pending patent applications outside the United States. Signode's portfolio covers over 340 inventions and spans diverse business platforms, as well as the different countries in which it operates. Signode's sizable patent portfolio demonstrates its pioneering role and commitment to protecting its technology.

26.    Many of Signode's pioneering innovations and patents are directed to battery-powered strapping tools used to form a tensioned loop of plastic strap around a load of goods to bundle them together or to unitize them onto a pallet.

27.    Signode recently introduced its new battery plastic strapping tool into the market, the BXT4 Battery Hand Tool for Plastic Strapping with EasyTrigger™ Technology (the "BXT4 tool"). This next-generation tool builds upon the innovations of the previous BXT tool generations with advanced features that enhance usability, performance, and durability.



28.    Before releasing the BXT4 tool, Signode sold (and still sells) the Signode® BXT3-13/16/19/32 series tools, the Orgapack® ORT-130/260/450/670 series tools, and the Strapex® 71/73/75/77 series tools. Because all of these tools rely on the same underlying technology, the products are collectively referred to as the "BXT3 tools" and the "BXT3 series tools."



29.    Signode's BXT3 and BXT4 tools make up over half of the global market share for high-end battery plastic strapping tools.

30.    Being one of Signode's most innovative and profitable product lines, Signode has more than 200 patents and patent applications around the world covering battery plastic strapping tools, including the Asserted Patents.

## YOUNGSUN PACK'S INFRINGING CONDUCT

31.    On information and belief, Youngsun Pack manufactures the following products that infringe the '238 Patent (collectively, the "Accused '238 Patent Products"):

a.    the BAOSHISHAN Electric Strapping Machine 5000mah Battery One Touch 2023 New Automatic Strapping Tool for 1/2–5/8in PP PET Straps Packaging Tensioner Machine for Box Pallet (the "Baoshishan Strapping Tool");

b.    the U.S. Solid Automatic Strapping Machine - Battery Powered Electric Banding Machine for PP/PET 1/2"–5/8" Straps (SKU: JFESM00030) (the "First U.S. Solid Banding Machine"); and

c.    the U.S. Solid Automatic Strapping Machine - Electric Banding Machine for 0.35"–0.63" PP PET Straps - 2×6000mah Battery Powered and LCD Screen (SKU: JFESM00024) (the "Second U.S. Solid Banding Machine").

32.    While the Accused '238 Patent Products appear different from one another on the outside, as it relates to their welders, they include the same or substantially the same components and function substantially the same as products Youngsun Pack sells outside of the United States.

33.    On information and belief, Youngsun Pack manufactures the following products that infringe the '794 Patent (collectively, the "Accused '794 Patent Products"):

a.    the HIGHTOP Q1 Automatic Electric Strapping Machine with 5000MAH*2 Battery Portable Digital Pallet Baler for 1/2–5/8inch (13–16mm) PP PET Automatic Banding Tool (the "Hightop Q1 Strapping Tool");

b.      the LED Touch Screen Electric Strapping Packaging Machine 2pcs 5000mah Battery Powered for 1/2–5/8in PP PET Strap Handheld Automatic Banding Tool by LOCXVE (the "Locxve Strapping Tool");

c.      the 1/2–5/8" Benchmark Battery Strapping Tool (Code 15546) (the "Benchmark 950 Strapping Tool");

d.      the 5/8–3/4" Benchmark Battery Strapping Tool (Code 15547) (the "Benchmark 1200 Strapping Tool"); and

e.      the Eagle Q31-19 Battery Operated Strapping Tool 5/8"–3/4" (the "Eagle Q31 Strapping Tool").

34.      For example, U.S. Patent Publication No. 2023/0143919 (the "'919 Publication") details the welding feature of the Accused '794 Patent Products.

35.      The '919 Publication is assigned to Taizhou Youngpai Pack Equipment Co. Ltd. ("Youngpai Pack").

36.      On information and belief, Youngpai Pack is a subsidiary of Youngsun Pack.

37.      On information and belief, Youngsun Pack manufactures the Benchmark 950 Strapping Tool and the Benchmark 1200 Strapping Tool at its Youngpai Pack facility. The below chart compares the VONPACK Q2L manufactured by Youngsun Pack with the Benchmark 950 Strapping Tool with similarity of features and color schemes.

| VONPACK Q2L | Benchmark 950 Strapping Tool |
|---|---|
|  |  |

38.    Moreover, Youngsun Pack offers for sale the Q31 Strapping Tools through its online store, available at https://www.youngsunpack.com/english/batterystrappingtool.shtml. The below chart compares the Q31 offered through Youngsun Pack's website with the Eagle Q31 Strapping Tool. On information and belief, Youngsun Pack manufacturers the Q31 and the Eagle Q31 Strapping Tool based on the physical and visual similarities.

| Youngsun Pack's Q31 | Eagle Q31 Strapping Tool |
|---|---|
|  |  |

39.    On information and belief, Youngsun Pack manufactures the following products that infringe the '914 Patent (collectively, the "Accused '914 Patent Products"):

a.    the Hightop Q1 Strapping Tool;

b.    the Baoshishan Strapping Tool;

c.    the Locxve Strapping Tool;

d.    the Benchmark 950 Strapping Tool;

e.    the Benchmark 1200 Strapping Tool;

f.    the Eagle Q31 Strapping Tool;

g.    the First U.S. Solid Banding Machine; and

h.    the Second U.S. Solid Banding Machine.

40.    On information and belief, Youngsun Pack manufactures the following products that infringe Signode's BXT3 Design Patents (collectively, the "Accused BXT3 Design Patent Products"):

      a.      the Benchmark 950 Strapping Tool;

      b.      the Benchmark 1200 Strapping Tool; and

      c.      the Baoshishan Strapping Tool.

41.     On March 28, 2025, Signode sent a cease and desist letter (the "C&D Letter," attached hereto as Exhibit G) to Youngsun Pack, specifically notifying Youngsun Pack of its infringement of the '794 and '914 Patents.

42.     In the C&D Letter, Signode asked Youngsun Pack to "cease and desist making, using, offering for sale, selling, and importing the LGT 260 tool and any other tools practicing Signode's patented technology." Moreover, Signode provided an exemplary claim chart demonstrating Youngsun Pack's infringement of Claim 1 of the '914 and '794 Patents. Since Signode sent the C&D Letter, the sole purchaser of the LGT 260 tool has agreed to stop selling that product in the United States.

43.     The C&D Letter identified several tools that operate similarly to the LGT 260 tool, with respect to the features claimed in Signode's '794 Patent, including: (1) the Benchmark 950 Strapping Tool; (2) the Benchmark 1200 Strapping Tool; (3) the Eagle Q31 Strapping Tool; and (4) the Baoshishan Strapping Tool. Each of these four products are Accused Products.

44.     Youngsun Pack did not deny manufacturing any of the identified products and has not otherwise responded to Signode's C&D Letter.

45.     Youngsun Pack does not have a license to the Asserted Patents.

46.     On information and belief, Youngsun Pack has not altered the functionality of any of its products to avoid infringement of the '794 or '914 Patents.

## COUNT I
## INFRINGEMENT OF THE '238 PATENT

47.    Signode realleges and incorporates by reference the allegations in Paragraphs 1 through 46 of this Complaint as though set forth fully herein.

48.    On information and belief, Youngsun Pack makes, uses, sells, offers for sale and/or imports the Accused '238 Patent Products in the United States. Any of these individual activities is an act of infringement under 35 U.S.C. § 271(a), and, as detailed below, Youngsun Pack's Accused '238 Patent Products directly infringe at least Claim 1 of the '238 Patent, either literally or under the doctrine of equivalents.

49.    On information and belief, the Baoshishan Strapping Tool is "a strapping device":



50.    On information and belief, the Baoshishan Strapping Tool includes "a tensioning wheel":



51.    On information and belief, the Baoshishan Strapping Tool includes "a welding shoe movable from a rest position downward to a connecting position to connect overlapping upper and lower strap layers together":





52.    On information and belief, the Baoshishan Strapping Tool includes "a transitioning device configured to move the welding shoe from the rest position downward to the connecting position":



53.     On information and belief, the Baoshishan Strapping Tool includes "a rotatable component configured to rotate relative to the transitioning device about a rotational axis, the rotatable component comprising a protrusion positioned to contact the transitioning device, wherein the protrusion is shaped such that rotation of the rotatable component about the rotational axis while the protrusion contacts the transitioning device causes the protrusion to exert a force on the transitioning device to move the welding shoe from the rest position to the connecting position, wherein the protrusion comprises an outer surface." Specifically, as shown in the annotated image below, the Baoshishan Strapping Tool includes a shaft (purple) and cam (blue) that rotate relative to the transitioning device (orange) about a rotational axis. Further, cam (blue) is a protrusion shaped such that it contacts the cam follower (orange) of the transitioning device to move the welding shoe from rest position to connected position. The cam (blue) also comprises an outer surface as depicted in the image below.



54.    On information and belief, the Baoshishan Strapping Tool includes "a motor configured to rotate the rotatable component about the rotational axis." Specifically, as shown in the annotated image above in Paragraph 51, the Baoshishan Strapping Tool includes a motor (yellow) that rotates the shaft (purple) by rotating the pinion gear (pink), which in turn rotates the sector gear (green), and results in the rotation of the shaft (purple) about its rotational axis.

55.    On information and belief, the Baoshishan Strapping Tool includes "wherein at least part of the transitioning device extends between the welding shoe and the rotatable component, and wherein at least part of the outer surface of the protrusion is spaced apart from the rotational axis." Specifically, as shown in the annotated image above in Paragraph 51, the Baoshishan Strapping Tool includes a transitioning device (orange) that extends between the welding shoe and the rotatable shaft (purple). Further, the outer surface of the cam (blue) is spaced apart from the rotational axis of the shaft (purple).

56.    On information and belief, the First U.S. Solid Banding Machine is "a strapping device":



57.    On information and belief, the First U.S. Solid Banding Machine includes "a tensioning wheel":



58.    On information and belief, the First U.S. Solid Banding Machine includes "a welding shoe movable from a rest position downward to a connecting position to connect overlapping upper and lower strap layers together":



59.    On information and belief, the First U.S. Solid Banding Machine includes "a transitioning device configured to move the welding shoe from the rest position downward to the connecting position":



60.    On information and belief, the First U.S. Solid Banding Machine includes "a rotatable component configured to rotate relative to the transitioning device about a rotational axis, the rotatable component comprising a protrusion positioned to contact the transitioning device, wherein the protrusion is shaped such that rotation of the rotatable component about the rotational axis while the protrusion contacts the transitioning device causes the protrusion to exert a force on the transitioning device to move the welding shoe from the rest position to the connecting position, wherein the protrusion comprises an outer surface." Specifically, on information and belief, the First U.S. Solid Banding Machine includes a shaft (purple) connected to the cam (blue) in the image below. When the shaft rotates the cam (blue), the cam (blue) exerts a force on the cam follower (orange) of the transitioning device (yellow) to move the welding shoe from rest position to connected position. The cam (blue) also comprises an outer surface as depicted in the image below.



61.     On information and belief, the First U.S. Solid Banding Machine includes "a motor configured to rotate the rotatable component about the rotational axis:"



62.     On information and belief, the First U.S. Solid Banding Machine includes "wherein at least part of the transitioning device extends between the welding shoe and the rotatable component, and wherein at least part of the outer surface of the protrusion is spaced apart from the rotational axis." Specifically, as shown in the annotated image above in Paragraph 58, the First U.S. Solid Banding Machine includes a transitioning device (yellow) that extends between the welding shoe and the rotatable shaft (purple). Further, as shown in the annotated image above in Paragraph 58, the outer surface of the cam (blue) is spaced apart from the rotational axis of the shaft (purple).

63.     On information and belief, the Second U.S. Solid Banding Machine is "a strapping device":



64.     On information and belief, the Second U.S. Solid Banding Machine includes "a tensioning wheel":



65.     On information and belief, the Second U.S. Solid Banding Machine includes "a welding shoe movable from a rest position downward to a connecting position to connect overlapping upper and lower strap layers together," which the Second U.S. Solid Banding Machine refers to as the "upper friction part":



| 21 | Toothed plate | JD-PSE-G011 | 1 |
| 22 | Friciton part bracket | JD-PSE-G009 | 1 |
| 23 | Upper friction part | JD-PSE-G008 | 1 |
| 24 | Eccentric shaft | JD-PSE-G024 | 1 |
| 25 | Bearing 150 | JD-PSE-E014 | 1 |

66.    On information and belief, the Second U.S. Solid Banding Machine includes "a transitioning device configured to move the welding shoe from the rest position downward to the connecting position":



67.    On information and belief, the Second U.S. Solid Banding Machine includes "a rotatable component configured to rotate relative to the transitioning device about a rotational axis, the rotatable component comprising a protrusion positioned to contact the transitioning device, wherein the protrusion is shaped such that rotation of the rotatable component about the rotational

axis while the protrusion contacts the transitioning device causes the protrusion to exert a force on the transitioning device to move the welding shoe from the rest position to the connecting position, wherein the protrusion comprises an outer surface." Specifically, on information and belief, the Second U.S. Solid Banding Machine includes a gear 37 (purple) with a protrusion in the image below. When the gear 37 (purple) rotates, it exerts a force on the cam follower (pink) of the transitioning device (orange) to move the welding shoe (blue) from rest position to connected position. The protrusion of the gear 37 (purple) further includes an outer surface as depicted in the image below.



68.     On information and belief, the Second U.S. Solid Banding Machine includes "a motor configured to rotate the rotatable component about the rotational axis." Specifically, as shown in the annotated image in Paragraph 65, the Second U.S. Solid Banding Machine includes a motor 6 (yellow) that rotates the gear 7 (green), which then rotates the gear 37 (purple) about a rotational axis.

69.     On information and belief, the Second U.S. Solid Banding Machine includes "wherein at least part of the transitioning device extends between the welding shoe and the rotatable component, and wherein at least part of the outer surface of the protrusion is spaced apart from the rotational axis." Specifically, as shown in the annotated image above in Paragraph 65, the Second U.S. Solid Banding Machine includes a transitioning device (orange) that extends between the welding shoe (blue) and the rotatable gear 37 (purple). Further, as shown in the annotated image above in Paragraph 65, the outer surface of the gear 37 (purple) is spaced apart from its rotational axis.

70.     Youngsun Pack has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Signode during the term of the '238 Patent.

71.     Thus, Youngsun Pack is liable to Signode in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.     Moreover, Youngsun Pack's infringement of the '238 Patent is willful, at least as of the filing of this Complaint. Before the filing of this Complaint, Youngsun Pack was, at a minimum, willfully blind to the existence of the '238 Patent and its infringement thereof. However, no later than the filing and service of this Complaint, Youngsun Pack has had knowledge of the

'238 Patent and the infringing nature of the '238 Patent and components thereof. Despite this, Youngsun Pack continues to infringe the '238 Patent.

73.    Youngsun Pack's continued infringement of the '238 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT II
## INFRINGEMENT OF THE '794 PATENT

74.    Signode realleges and incorporates by reference the allegations in Paragraphs 1 through 73 of this Complaint as though set forth fully herein.

75.    On information and belief, Youngsun Pack makes, uses, sells, offers for sale and/or imports the Accused '794 Patent Products in the United States. Any of these individual activities is an act of infringement under 35 U.S.C. § 271(a), and, as detailed below, Youngsun Pack's Accused '794 Patent Products directly infringes at least Claim 1 of the '794 Patent, either literally or under the doctrine of equivalents.

76.    On information and belief, the Eagle Q31 Strapping Tool is representative of the Accused '794 Patent Products as it relates to the claimed welding functionality.

77.    On information and belief, the Eagle Q31 Strapping Tool is a "strapping device":



78.    On information and belief, the Eagle Q31 Strapping Tool includes "a tensioning wheel":



79.    On information and belief, the Eagle Q31 Strapping Tool includes "a strap connector operable to connect two areas of a strap to one another, the strap connector movable from a rest position downward to a connecting position and from the connecting position upward to the rest position." For example, Q-2022 depicted in blue below is an example of the upper weld pad of the Eagle Q31 Strapping Tool that operates to weld two areas of strap together and moves from a resting position to a connecting position:



80.    On information and belief, the Eagle Q31 Strapping Tool includes "a pivoting element" (purple), "a toggle lever coupled to the pivoting element and to the strap connector" (orange), and "a spring circumscribing at least part of the toggle lever" (green):



81.    On information and belief, the Eagle Q31 Strapping Tool includes "wherein the pivoting element and the toggle lever are movable between a first configuration and a second configuration different from the first configuration." For example, the purple pivoting element above and the orange toggle lever are in a first configuration when the blue strap connector is in the rest position and a second configuration when the blue strap connector is in the connecting position because as the components identified in Paragraph 78 above move into a second configuration, the blue strap connector moves downward to weld the two strap parts together.

82.    For the same reasons above, on information and belief, the Eagle Q31 Strapping Tool includes "wherein the strap connector is in the rest position when the pivoting element and the toggle lever are in the first configuration and in the connecting position when the pivoting element and the toggle lever are in the second configuration."

83.    On information and belief, the Eagle Q31 Strapping Tool includes "wherein the spring is configured to, when the pivoting element and the toggle lever are in the second

configuration, exert a first force on the pivoting element and a second force on the toggle lever." For example, the green spring above exerts forces on the purple pivoting element and the blue strap connector when the purple pivoting element and the orange toggle lever are in the second configuration to maintain pressure on the strap during welding.

84.    Youngsun Pack has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Signode during the term of the '794 Patent.

85.    Thus, Youngsun Pack is liable to Signode in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

86.    Youngsun Pack's infringement of the '794 Patent is willful, at least as of the date of Signode's C&D Letter. However, no later than the filing and service of this Complaint, Youngsun Pack has had knowledge of the '794 Patent and the infringing nature of the Accused Products. Despite this, Youngsun Pack continues to infringe the '794 Patent.

87.    Youngsun Pack's continued infringement of the '794 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT III
## INFRINGEMENT OF THE '914 PATENT

88.    Signode realleges and incorporates by reference the allegations in Paragraphs 1 through 87 of this Complaint as though set forth fully herein.

89.    On information and belief, Youngsun Pack makes, uses, sells, offers for sale, and/or imports the Accused '914 Patent Products in the United States. Any of these individual activities is an act of infringement under 35 U.S.C. § 271(a), and, as detailed below, Youngsun Pack's Accused '914 Patent Products directly infringe at least Claim 1 of the '914 Patent, either literally or under the doctrine of equivalents.

90.    On information and belief, the Eagle Q31 Strapping Tool is representative of the Accused '914 Patent Products as it relates to the claimed operating modes functionality.

91.    On information and belief, the Eagle Q31 Strapping Tool is a "strapping device":



92.    On information and belief, the Eagle Q31 Strapping Tool includes "a tensioner operable to tension a strap":



93.    On information and belief, the Eagle Q31 Strapping Tool includes "a strap connector operable to connect two areas of the strap to one another." For example, Q-2022 depicted in blue below is an example of the upper weld pad of the Eagle Q31 Strapping Tool that operates to weld two areas of strap together:



94.    On information and belief, the Eagle Q31 Strapping Tool includes "one or more motors configured to operate the tensioner and the strap connector." Specifically, as detailed below, the Eagle Q31 Strapping Tool include a motor (Q-5034) (pink) to operate the tensioner and a separate motor (Q-6024) (yellow) to operate the strap connector:





95.    On information and belief, the Eagle Q31 Strapping Tool includes "a first input device":



96.    On information and belief, the Eagle Q31 Strapping Tool includes "a control device configured to, when in a first operating mode, responsive to an actuation of the first input device, control the one or more motors to: (1) operate the tensioner to tension the strap around an object until a predetermined tension is reached in the strap; and (2) after the predetermined tension is reached in the strap, without additional operator input automatically operate the strap connector to connect the two areas of the strap to form a tensioned strap loop around the object":



97.    On information and belief, the Eagle Q31 Strapping Tool includes "a tension-setting input device configured to enable an operator to select the predetermined tension":



98.    Youngsun Pack has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Signode during the term of the '914 Patent.

99.    Thus, Youngsun Pack is liable to Signode in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

100.    Youngsun Pack's infringement of the '914 Patent is willful, at least as of the date of Signode's C&D Letter. However, no later than the filing and service of this Complaint, Youngsun Pack has had knowledge of the '914 Patent and the infringing nature of the Accused Products. Despite this, Youngsun Pack continues to infringe the '914 Patent.

101.    Youngsun Pack's continued infringement of the '914 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT IV**
**INFRINGEMENT OF THE D'688 PATENT**

102.    Signode realleges and incorporates by reference the allegations in Paragraphs 1 through 101 of this Complaint as though set forth fully herein.

103.    Upon information and belief, Youngsun Pack makes, uses, sells, offers for sale, and/or imports the Accused BXT3 Design Patent Products in the United States. Any of these individual activities is an act of infringement under 35 U.S.C. § 271(a), and, as set forth in the below comparisons, Youngsun Pack's Accused BXT3 Design Patent Products infringe the D'688 Patent.

104.    Youngsun Pack has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Signode during the term of the D'688 Patent.

105.    The below chart shows a comparison between Figure 5 of the D'688 Patent and the Benchmark 950 Strapping Tool, which is available online at: https://www.benchmarkinc.com/1-2-5-8-benchmark-battery-strapping-tool-15546.html.

| D'688 Patent | Accused Device |
|---|---|



106.    The below chart shows a comparison between Figure 5 of the D'688 Patent and the Benchmark 1200 Strapping Tool, which is available online at: https://www.benchmarkinc.com/1-2-5-8-benchmark-battery-strapping-tool-15547.html.

| D'688 Patent | Accused Device |
|---|---|



107.    The below chart shows a comparison between Figure 4 of the D'688 Patent and the Baoshishan    Strapping    Tool,    which    is    available    online    at: https://www.amazon.com/BAOSHISHAN-Strapping-Automatic-Packaging-Tensioner/dp/B0C5JDL88Z.

| D'688 Patent | Accused Device |
|:---:|:---:|
|  | |

108.    As shown above, the Accused BXT3 Design Patent Products are strapping devices that implement ornamental designs claimed by the D'688 Patent. In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the non-functional ornamental design for the strapping device claimed in the D'688 Patent and each of the Accused BXT3 Design Patent Products are substantially the same, with resemblance such as to deceive an ordinary observer, inducing him or her to purchase an Accused BXT3 Design Patent Product believing it to be the design claimed in the D'688 Patent and manufactured by Signode.

109.    Thus, Youngsun Pack is liable to Signode in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. §§ 284 and 289.

110.    Moreover, Youngsun Pack's infringement of the D'688 Patent is willful, at least as of the filing of this Complaint. Prior to the filing of this Complaint, Youngsun Pack was, at a minimum, willfully blind to the existence of the D'688 Patent and its infringement thereof. However, no later than the filing and service of this Complaint, Youngsun Pack has had knowledge of the D'688 Patent and the infringing nature of the D'688 Patent and components thereof. Despite this, Youngsun Pack continues to infringe the D'688 Patent.

111.    Youngsun Pack's continued infringement of the D'688 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT V
## <u>INFRINGEMENT OF THE D'897 PATENT</u>

112.    Signode realleges and incorporates by reference the allegations in Paragraphs 1 through 111 of this Complaint as though set forth fully herein.

113.    Upon information and belief, Youngsun Pack makes, uses, sells, offers for sale, and/or imports the Accused BXT3 Design Patent Products in the United States. Any of these individual activities is an act of infringement under 35 U.S.C. § 271(a), and, as set forth in the below comparisons, Youngsun Pack's Accused BXT3 Design Patent Products infringe the D'897 Patent.

114.    Youngsun Pack has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Signode during the term of the D'897 Patent.

115.    The below chart shows a comparison between Figure 5 of the D'897 Patent and the Benchmark 950 Strapping Tool, which is available online at: https://www.benchmarkinc.com/1-2-5-8-benchmark-battery-strapping-tool-15546.html.

| D'897 Patent | Accused Device |
|---|---|
|  | |

116.    The below chart shows a comparison between Figure 5 of the D'897 Patent and the Benchmark 1200 Strapping Tool, which is available online at: https://www.benchmarkinc.com/1-2-5-8-benchmark-battery-strapping-tool-15547.html.



| D'897 Patent | Accused Device |
|---|---|

117.    The below chart shows a comparison between Figure 4 of the D'897 Patent and the Baoshishan        Strapping        Tool,        which        is        available        online        at: https://www.amazon.com/BAOSHISHAN-Strapping-Automatic-Packaging-Tensioner/dp/B0C5JDL88Z.

| D'897 Patent | Accused Device |
|---|---|

118.    The Accused BXT3 Design Patent Products are strapping devices that implement ornamental designs claimed by the D'897 Patent. In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the non-functional ornamental design for the strapping device claimed in the D'897 Patent and each of the Accused BXT3 Design Patent Products are substantially the same, with resemblance such as to deceive an ordinary observer, inducing him or her to purchase an Accused BXT3 Design Patent Product believing it to be the design claimed in the D'897 Patent and manufactured by Signode.

119.    Thus, Youngsun Pack is liable to Signode in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. §§ 284 and 289.

120.    Moreover, Youngsun Pack's infringement of the D'897 Patent is willful, at least as of the filing of this Complaint. Prior to the filing of this Complaint, Youngsun Pack was, at a minimum, willfully blind to the existence of the D'897 Patent and its infringement thereof. However, no later than the filing and service of this Complaint, Youngsun Pack has had knowledge of the D'897 Patent and the infringing nature of the D'897 Patent and components thereof. Despite this, Youngsun Pack continues to infringe the D'897 Patent.

121.    Youngsun Pack's continued infringement of the D'897 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT VI
### INFRINGEMENT OF THE D'229 PATENT

122.    Signode realleges and incorporates by reference the allegations in Paragraphs 1 through 121 of this Complaint as though set forth fully herein.

123.    Upon information and belief, Youngsun Pack makes, uses, sells, offers for sale, and/or imports the Accused BXT3 Design Patent Products in the United States. Any of these individual activities is an act of infringement under 35 U.S.C. § 271(a), and, as set forth in the below comparisons, Youngsun Pack's Accused BXT3 Design Patent Products infringe the D'229 Patent.

124.    Youngsun Pack has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Signode during the term of the D'229 Patent.

125.    The below chart shows a comparison between Figure 5 of the D'229 Patent and the Benchmark 950 Strapping Tool, which is available online at: https://www.benchmarkinc.com/1-2-5-8-benchmark-battery-strapping-tool-15546.html.

| D'229 Patent | Accused Device |
|---|---|



126.    The below chart shows a comparison between Figure 5 of the D'229 Patent and the Benchmark 1200 Strapping Tool, which is available online at: https://www.benchmarkinc.com/1-2-5-8-benchmark-battery-strapping-tool-15547.html.

| D'229 Patent | Accused Device |
|---|---|



127.    The below chart shows a comparison between Figure 4 of the D'229 Patent and the Baoshishan Strapping Tool, which is available online at: https://www.amazon.com/BAOSHISHAN-Strapping-Automatic-Packaging-Tensioner/dp/B0C5JDL88Z.

| D'229 Patent | Accused Device |
|---|---|
|  | |

128.    As shown above, the Accused BXT3 Design Patent Products are strapping devices that implement ornamental designs claimed by the D'229 Patent. In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the non-functional ornamental design for the strapping device claimed in the D'229 Patent and each of the Accused BXT3 Design Patent Products are substantially the same, with resemblance such as to deceive an ordinary observer, inducing him or her to purchase an Accused BXT3 Design Patent Product believing it to be the design claimed in the D'229 Patent.

129.    Thus, Youngsun Pack is liable to Signode in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. §§ 284 and 289.

130.    Moreover, Youngsun Pack's infringement of the D'229 Patent is willful, at least as of the filing of this Complaint. Prior to the filing of this Complaint, Youngsun Pack was, at a minimum, willfully blind to the existence of the D'229 Patent and its infringement thereof. However, no later than the filing and service of this Complaint, Youngsun Pack has had knowledge of the D'229 Patent and the infringing nature of the D'229 Patent and components thereof. Despite this, Youngsun Pack continues to infringe the D'229 Patent.

131.    Youngsun Pack's continued infringement of the D'229 Patent will cause Signode to suffer substantial and irreparable harm for which there is no adequate remedy at law.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Signode demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Signode respectfully requests that:

A.      The Court find that Youngsun Pack has infringed and is infringing the Asserted Patents;

B.      The Court issue an order preliminarily enjoining Youngsun Pack and anyone acting or participating by, through, or in concert with Youngsun Pack from infringing the Asserted Patents;

C.      The Court issue an order pursuant to 35 U.S.C. § 283 permanently enjoining Youngsun Pack and anyone acting or participating by, through, or in concert with Youngsun Pack from infringing the Asserted Patents;

D.      The Court find that Youngsun Pack's infringement of the Asserted Patents was willful, and that Youngsun Pack's continued infringement of the Asserted Patents is willful;

E.      The Court award damages under at least 35 U.S.C. §§ 284 and 289 adequate to compensate Signode for Youngsun Pack's patent infringement, and an accounting to adequately compensate Signode for the infringement, including, but not limited to, lost profits and/or a reasonable royalty, including an award of enhanced damages if warranted;

F.      The Court declare that this is an exceptional case entitling Signode to its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes and rules;

G.      The Court award pre-and post-judgment interest at the maximum rate allowed by law; and

H.      The Court award such other relief as the Court may deem just and proper.

Dated: June 13, 2025                        Respectfully submitted

                                      /s/ Devon C. Beane

Devon C. Beane *(Lead Counsel)*
Bar No. 6303129L
Jared R. Lund
(*pro hac vice* forthcoming)
A. Rebekah Hill
Bar No. 6345666IL
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
devon.beane@klgates.com
jared.lund@klgates.com
rebekah.hill@klgates.com

Erik J. Halverson
Bar No. 333492CA
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel.: (415) 882-8238
erik.halverson@klgates.com

*Attorneys for Plaintiff Signode Industrial Group LLC*